UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CASE NO. 21-CR-392 (RCL)** |
| | : | |
| **RUSSELL TAYLOR,** | : | |
| Defendant. | : | |

# MOTION FOR REVOCATION OF
# RELEASE ORDER

On January 6, 2021, after organizing and fomenting a group of armed fighters to travel with weapons to Washington, D.C. to stop Congress's certification of the 2020 Presidential Election, defendant Russell Taylor, armed with a knife, joined a mob of rioters to push back a line of law enforcement officers that stood between Taylor and the Upper West Terrace of the Capitol. After successfully clashing with these officers and advancing to the Upper West Terrace, Taylor celebrated with his co-conspirators at the sight of the chaos to which they had contributed. That evening, in a message to a friend, Taylor predicted that the next step after January 6 would be "Insurrection!"

Now that Taylor has been charged for his crimes on January 6, there is no condition or combination of conditions that can guarantee the safety of the community. Accordingly, the Court should revoke the Release Order issued by the Magistrate Judge in the Central District of California in this case and detain Taylor pending trial.

1

I.    **FACTS**

    A.    <u>Taylor Privately Organizes A Group of Armed Fighters to Travel to D.C. for January 6, 2021</u>

On January 1, 2021, defendant Taylor, using the moniker "Porter RockQwell," started a Telegram chat group he called "The California Patriots- DC Brigade" for the specific purpose of organizing a group of "fighters" to travel to D.C. with weapons for January 6, 2021 to prevent the peaceful transfer of power that day. In the about section of the group, which ultimately included more than 30 members, Taylor explained that this Telegram chat would "serve as the Comms for able bodied individuals that are going to DC on Jan 6." Acknowledging that "many of us have not met before," he wrote that "we are all ready and willing to fight. We will come together for this moment that we are called upon."



Then, in a series of messages over the course of January 1, 2021, Taylor elaborated on his intentions for the group, calling for a group of "fighters" who would bring "plates" and "weaponry" to Washington, D.C. for the 6th.

> From: 1244941279 Porter RockQwell (owner)
> Initially our intent is not to go after and seek violence but primary function is preservation of our liberties and we will not be intimidated by violence against those liberties.
> As we are on site and events begin to unfold that may change.
> 1/1/2021 9:11:45 AM(UTC-8)

> From: 1244941279 Porter RockQwell (owner)
> Also, please keep chatter here to a bare minimum and use the other thread to share memes, news and information.
> This thread is exclusive to be utilized to organize a group of fighters to have each other's backs and ensure that no one will trample on our rights. Also, if there is key intel that we need to be aware of tor possible threats.
> I am assuming that you have some type of weaponry that you are bringing with you and plates as well.
> 1/1/2021 9:14:14 AM(UTC-8)

Taylor also posted messages asking that group members identify themselves, whether they had prior law enforcement experience, any "special skills relevant to our endeavors," and the date and time of their arrival in D.C. He further identified a hotel in downtown D.C. as "our main location for meeting."

Starting that day, and through January 6, 2021, members of the DC Brigade answered Taylor's call to arms. Members of the group, including four of Taylor's co-defendants, immediately began posting information about their skills, travel plans, and the weapons they planned to bring to Washington, D.C. In the days between January 1 and January 6, 2021, as a

3

number of the DC Brigade members prepared to and started traveling to D.C. with weapons, Taylor further provided advice to the group on which weapons could, or could not, be lawfully carried into D.C.  In one post concerning the type of knives to bring, Taylor wrote, "I believe that you can carry most fixed blades just not into the government buildings.  Something tells me though if we are inside government buildings it won't be on the top of our list."  Taylor also tasked another group member (co-defendant Derek Kinnison) with organizing a radio channel for the group to use while on the ground in D.C.  On January 4, 2021, Taylor flew to Washington, D.C., where he met up with co-defendant Hostetter, who had driven cross-country with Taylor's backpack, which was full of weapons.

Significantly, despite the brazenness of these messages and Taylor's clearly-stated intentions for the D.C. Brigade Telegram group, there is evidence that Taylor harbored these extreme intentions since at least the fall of 2020, and that Taylor and his co-conspirators' planning and preparation for the events that occurred on January 6, 2021 began in at least late December, 2020. In the fall of 2020, Taylor joined the board of directors of the American Phoenix project, an organization founded by Hostetter that Hostetter used to advocate for violence against individuals and groups who supported the 2020 Presidential election results, including in public speeches by Hostetter in which he called for "execution" as the "just punishment" for those who refused to overturn the election results.

Then, starting on December 19, 2020, as alleged in the indictment, Taylor and his co-conspirators used various means of communication, including social media, text messages, and the encrypted messaging application Telegram to communicate about their plans to travel to Washington D.C. for January 6, 2021 and the events they planned to be a part of there, including

4

targeting the U.S. Capitol. Defendant Taylor in particular used these communications to organize others for January 6, 2021 in Washington, D.C. On December 26, 2020, Taylor messaged defendant Hostetter, writing "I truly believe that we were meant to come together to be engaged in this war at this time and as I have said before it is an honor to be shoulder to shoulder with you." On December 29, 2020, Taylor exchanged messages with defendant Hostetter about bringing firearms to D.C., and agreed that Hostetter would drive Taylor's backpack to D.C. That same day, in response to a question in a Telegram chat with other co-conspirators about when to be at the Capitol on the morning of January 6, 2021, Taylor posted to the group, "I personally want to be on the front steps and be one of the first ones to breach the doors!" On December 30, 2020, Taylor used Instagram to encourage others to join him on January 6 to "meet up with the stop the steal organization and surround the capital." Throughout these private messages among his co-conspirators and friends, Taylor repeatedly made clear his intentions for violence on January 6.

    **B.**    <u>Washington, D.C.: Taylor Publicly Reiterates A Call for Violence</u>

On January 5, Taylor took his private exhortations of violence public, calling for violence in connection with overturning the election outcome in a speech outside the Supreme Court. On the afternoon of the 5th, as a speaker at a Virginia Women for Trump rally mere steps from the U.S. Capitol itself, Taylor gave a speech in which he stated:

> I am Russell Taylor and I am a free American. And I stand here in the streets with you in defiance of a communist coup that is set to take over America. But we are awake and we are never going back to sleep. We are free Americans and in these streets, we will fight and we will bleed before we allow our freedom to be taken from us. We declare that we will never bend a knee to the Marxists within Antifa, to the tyrannical Democrat governors who are puppets, and to the deep state commie actors who threaten to destroy America.... But now these anti-Americans have made the fatal mistake, and they have brought out the Patriot's fury onto these streets and they did so without knowing that we will not return to our peaceful way of life until this election is made right, our freedoms are restored, and America is preserved.

Later that evening, Taylor sent a message over an encrypted messaging application, in which he posted the following photograph with the caption, "Now getting ready for tomorrow."



This photo shows the tactical vest, knife and gloves, scarf and backpack that Taylor wore at the Capitol on January 6, 2021. The photo also shows additional weapons, including two hatchets and a stun baton.

Meanwhile, the other individuals Taylor had organized through the DC Brigade Telegram chat continued to arrive in D.C. to carry out Taylor's stated mission. On January 4, 2021, four of Taylor's co-defendants, Derek Kinnison, Erik Warner, Ronald Mele, and Felipe Martinez, also arrived in Washington, D.C., having driven cross-country without stopping in an SUV loaded with weapons including firearms, knives, and bear spray, as well as tactical gear. Once on the ground, Kinnison and others used the DC Brigade chat to communicate across the group, including a post by Kinnison identifying a radio channel for the group to use to communicate on the ground in D.C.

    **C.**    <u>Taylor's Participation in the Riot</u>

On January 6, 2021, defendant Taylor's organizing came to fruition. That morning, Taylor

armed himself with a tactical plate-carrier vest, a knife, and a stun baton in his backpack. After listening to President Trump's speech at the Ellipse from outside the secured perimeter due to the weapons he was carrying, Taylor marched with his co-defendant Hostetter and others to the Capitol. Once there, Taylor was among an initial group of rioters who clashed with a line of law enforcement officers on the Lower West Terrace of the Capitol building, ultimately causing those officers to retreat and the rioters to access a staircase to the Upper West Terrace of the building. Immediately prior to his involvement in this attack on law enforcement, Taylor filmed a "selfie" video in which he urged on other rioters who were fighting with officers on a lower level of the West Terrace, shouting, "Move forward Americans!"  Taylor then turned back to the officers a few feet away from him, ordering, "Last chance boys. Move back!" Immediately after this, Taylor joined the crowd of rioters pushing against the police line:



After a short time, this group overcame those officers. Despite being hit with pepper spray by

police in a final effort to repel his advances, Taylor continued past the officers and up a staircase to the Capitol's Upper West Terrace, as numerous other rioters moved into the area behind him. Once on the Upper West Terrace, Taylor, still armed with the knife, and co-defendant Hostetter took photographs of themselves to celebrate their role in the riot:



Throughout the riot, Taylor repeatedly acted in open defiance of law enforcement efforts to maintain order and end the riot.



At the same time, Taylor's efforts to organize others through the DC Brigade came to bear. During the riot, Taylor's co-defendants, dressed in tactical gear, all advanced to the Upper West Terrace of the Capitol, where Taylor met with defendants Kinnison and Martinez. At 2:13 pm, defendant Warner continued on into the Capitol building itself, entering the building through a broken window. In the words of defendant Mele in a "selfie" video later found on his cell phone, "We stormed the Capitol."

In the hours following the riot, Taylor defiantly touted what he had done in text messages to friends and over Telegram. At 6:18 pm, TAYLOR posted to a Telegram chat, "I was pushing through traitors all day today. WE STORMED THE CAPITOL! Freedom was fully demonstrated today!" Later that evening, after bragging to friends that he had "stormed the capital," when a friend asked him what happens next, Taylor responded, "Insurrection!"

## II.     PROCEDURAL HISTORY

Shortly after January 6, 2021, the FBI received public tips sent to the FBI tipline for the U.S. Capitol riot from multiple individual tipsters who identified defendant Taylor as having

participated in the riot on January 6, 2021.  The tips and media included images and videos of the defendant on Capitol Grounds, including images of Taylor with a knife visible in his tactical plate-carrier vest and of Taylor with a group of other rioters pushing through a line of law enforcement officers trying to secure the inaugural stage on the West Terrace of the Capitol Building, within the area that was not open to the public on January 6, 2021.  Many of these images were circulated via both mainstream news outlets and on social media platforms.

Based on this information, the FBI began investigating Taylor's role in the riot.  On January 27, 2021, the FBI executed a search warrant at the homes of defendants Taylor and Hostetter.  After reviewing Taylor's cell phone, investigating the leads identified in the phone, and by examining other evidence, the FBI identified the DC Brigade Telegram chat that showed the concerted action among Taylor and his co-conspirators, as well as additional evidence of crimes by Taylor in connection with the Capitol riot.

On June 9, 2021, a grand jury charged Taylor and five co-defendants in an eight-count indictment for their crimes during the Capitol riot.  Defendant Taylor was charged with six felony violations, including 18 U.S.C. § 1512(k), Conspiracy to Obstruct Official Proceedings; 18 U.S.C. § 1512(c)(2) and § 2, Obstruction of an Official Proceeding and Aiding and Abetting; 18 U.S.C. § 231 and § 2, Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting; 18 U.S.C. § 1752(a)(1) and (b)(1)(A), Entering and Remaining in a Restricted Building and Grounds and Carrying a Deadly or Dangerous Weapon; 18 U.S.C. § 1752(a)(2) and (b)(1)(A), Entering and Remaining in a Restricted Building and Grounds and Carrying a Deadly or Dangerous Weapon; and 40 U.S.C. § 5104(e)(1)(A), Unlawful Possession of a Dangerous Weapon on Capitol Grounds and in Buildings. The most serious of these offenses include a maximum penalty of 20 years' incarceration.  An arrest warrant was issued on the same date.

In the early morning hours of June 10, 2021, at his prior request, the government notified Taylor's defense counsel of the arrest warrant and directed defense counsel to tell his client to self-surrender that morning. Taylor was taken into the FBI"s custody later that day. United States Magistrate Judge Douglas F. McCormick conducted Taylor's initial appearance and detention hearing on June 11, 2021 and released Taylor over the government's objection.[1] Upon the government's motion, Judge McCormick granted a stay of release until 5 p.m. PDT on June 15, 2021 to allow the government to appeal.

Because the factors enumerated in the Bail Reform Act, 18 U.S.C. § 3142 strongly favor pre-trial detention in this case, the government now moves the Court to revoke Judge McCormick's June 11, 2021 release order and detain the defendant pending trial.

### III. LEGAL STANDARD

The government submits this motion for revocation of Judge McCormick's release order pursuant to 18 U.S.C. § 3145(a)(1). The Court's review should be *de novo*.

"Although the D.C. Circuit has yet to opine on the question, substantial precedent supports the view that a magistrate judge's detention order is subject to *de novo* review by the district court." *United States v. Cua*, No. CR 21-107 (RDM), 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021) (citation omitted). Indeed, the D.C. Circuit recently noted that Chief Judge Howell conducted a *de novo* review of a release order under Section 3145(a), and that district courts have "broad discretion" to review magistrate judges' detention decisions. *United States v. Munchel*, 991 F.3d 1273, 1280 & n.3 (D.C. Cir. 2021) (citation omitted).

---

[1] Judge McCormick's Release Order required Taylor to meet a $50,000 bond, to relinquish his firearms, to participate in a Location Monitoring Program, to stay within the Central District of California (except to travel to D.C. for legal proceedings) absent prior approval from Pre-trial Services, to surrender his passport, and to avoid all contact with known co-defendants outside the presence of counsel, among other conditions.

Upon holding a detention hearing, the Court "shall order" a defendant detained if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Here, there are no conditions that could assure the latter; in other words, releasing the defendant would present a "danger to the community." *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

"When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community," the Supreme Court has explained, "a court may disable the arrestee from executing that threat." *United States v. Salerno*, 481 U.S. 739, 751 (1987). Notably, "the threat need not be of physical violence, and may extend to 'non-physical harms such as corrupting a union.'" *Munchel*, 991 F.3d at 1283 (quoting *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988)). "In assessing whether pretrial detention is warranted for dangerousness, the district court considers four statutory factors: (1) 'the nature and circumstances of the offense charged,' (2) 'the weight of the evidence against the person,' (3) 'the history and characteristics of the person,' and (4) 'the nature and seriousness of the danger to any person or the community that would be posed by the persons' release.'" *Id*. at 1279 (quoting 18 U.S.C. § 3142(g)).

At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

IV. **ARGUMENT**

Here, the factors enumerated in 18 U.S.C. § 3142(g) strongly favor pre-trial detention. The Court should revoke the Magistrate's release order and detain Taylor pending trial.

    **A.**    <u>The Nature and Circumstances of Taylor's Crimes Support Detention</u>

Taylor's crimes—conspiring to interfere with the Joint Session of Congress on January 6, actually obstructing that proceeding, providing a communication platform for and actively recruiting others to join the conspiracy, fighting with law enforcement officers who were trying to prevent the rioters from advancing closer to the Capitol building, and carrying a knife onto Capitol grounds—are uniquely dangerous. Pre-planned violence of the type fomented, organized, and carried out by Taylor are the reason why a large vigilante mob of rioters gathered on January 6, stormed the Capitol grounds and building, and delayed the Joint Session of Congress. Taylor's actions sought to undermine the peaceful transfer of power that is at the core of our democracy. The seriousness of the crimes with which he is charged cannot be overstated.

Finally, in considering the nature and circumstances of the offense, the Court should also weigh the possible penalty Taylor faces upon conviction. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, he has been indicted on six felony offenses, two of which include a statutory maximum term of imprisonment of 20 years if convicted of these charges. This substantial penalty incentivizes flight and evading law enforcement.

    **B.**    <u>The Weight of the Evidence Favors Detention</u>

Second, the weight of the evidence against Taylor is substantial: electronic evidence found on Taylor's cell phone details the planning and coordination he undertook to bring a "group of fighters" carrying "weaponry" and "plates" to Washington, D.C. for January 6; Telegram messages show that he started that coordination no later than December 19, 2020 and, on December 29, 2020, that he made his intentions to breach the Capitol building clear ("I personally want to be on the front steps and be one of the first ones to breach the doors!"); a video captures him across the street from the U.S. Capitol on January 5 advocating for violence to overturn the election results;

13

photographs and videos from January 6 capture him on the Lower West Terrace of the Capitol, armed with a knife, fighting with law enforcement officers who were trying to prevent rioters from advancing toward the Capitol building; and Telegram and text messages in which he admits to storming the Capitol.  This voluminous evidence supporting the charges against Taylor strongly favors detention.

      **C.**      <u>The History and Characteristics of the Defendant</u>

Third, Taylor's history and characteristics animate the conclusions drawn from the facts above.  Taylor has no known criminal convictions.  That said, he has exhibited and continues to maintain an extremist anti-government ideology that this Court has no reason to believe will abate if released.  Taylor is also known to possess numerous firearms and other weapons and ammunition, is willing to incite and lead others, and harbors a belief that his actions on January 6 were wholly justified and  mindset that, if anything, risks greater radicalization if released into a community of like-minded individuals whom she has been known to primarily associate with and that this Court cannot fashion a condition to prevent.

Nothing in the record suggests that he has any remorse about the events of January 6 or has disclaimed the beliefs and his actions on that day, and thus there is no evidentiary basis to assume that defendant will refrain from similar activities in the future.  In fact, on January 7, 2021,  the defendant showed continued resolve and urged others in the DC Brigade chat to "hold the f***ing line," and questioned whether they were "1776 Patriot[s] or Fox News patriot[s]"; challenging their resolve, as seen in the post below.

> From: 1244941279 Porter RockQwell (owner)
> Question you need to be asking yourself this morning-
> Are you a 1776 Patriot or a Fox News patriot?
> The line was drawn yesterday, do not cave to the media deception and lies! Freedom of We the People was fully demonstrated yesterday! Honor it! Do not be deceived!
>
> 1/7/2021 11:02:05 AM(UTC-8)

**D.**     Taylor's Release Would Be Dangerous to the Community

Finally, it is difficult to fathom a more serious danger to the community—to the District of Columbia, to the country, or to the fabric of American Democracy—than the one posed by someone who organized "a group of fighters" who traveled cross-country with weapons to participate in a riot at the United States Capitol. Every person who was present without authority at the Capitol on January 6 contributed to the chaos of that day and the danger posed to law enforcement, the United States Vice President, Members of Congress, and the peaceful transfer of power. Taylor's specific conduct aggravated the chaos and danger. As Taylor made clear in statements before January 6, his actions were designed to interfere with the joint session of Congress on January 6 ("I personally want to be on the front steps and be one of the first ones to breach the doors!"), and to instigate fear in anyone who did not agree with his belief that the 2020 Presidential election was stolen ("we will not return to our peaceful way of life until this election is made right, our freedoms are restored, and America is preserved"). And, significantly, the defendant's conduct on January 6 proved that he was, in fact, willing to resort to violence to act on these beliefs.

Moreover, the defendant has stated in his own words that he has no remorse for his actions, and that he intends to continue this type of conduct. Hours after the riot, as the nation reeled from the shocking attack on our democracy, Taylor continued to advance his view that anyone who

15

disagreed with him is a "traitor" and crowed over his own role in the chaos, posting on Telegram: "I was pushing through traitors all day today.  WE STORMED THE CAPITOL!  Freedom was fully demonstrated today!"  Then, in response to a text message from friend who asked him what was next, Taylor responded, "Insurrection!"  These statements, which Taylor made in private forums that he never expected law enforcement would see, show his true beliefs and his intentions for the future.  In light of this, no combination of release conditions could reasonably assure the safety of the community and Taylor's compliance with the Court's orders.  Only detention mitigates such grave dangers.

V. **CONCLUSION**

For the foregoing reasons, the government requests that the Court revoke the Magistrate Judge's Release Order and instead detain the defendant pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793


By:     /s/ *Risa Berkower*
RISA BERKOWER
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 803-1576
Risa.berkower@usdoj.gov

*/s/ Katherine Nielsen*
KATHERINE NIELSEN
Trial Attorney, Detailee
D.C. Bar No. 491879
U.S. Attorney's Office

16

555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 355-5736
Katherine.nielsen@usdoj.gov