UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RUSSELL TAYLOR,**<br><br>     Defendant. | Case No. 21-cr-392-2 (RCL) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO MODIFY CONDITIONS OF PROBATION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Russell Taylor's Motion To Allow Travel (ECF No. 520), which is in effect a motion to modify the conditions of the defendant's probation.

On May 5, 2024, the Court sentenced the defendant, who pleaded guilty, to thirty-six months' probation for his conviction for Conspiracy To Obstruct an Official Proceeding, in violation of Title 18, United States Code, Section 1512(k). *See* ECF No. 492. As part of his conditions of probation, the Court ordered that the defendant "must not knowingly leave the federal judicial district where [he is] authorized to reside without first getting permission from the court or the probation officer." *Id.* at 3.[1] In his motion, the defendant asks that the Court permit him

---

[1] Unsurprisingly, this standard condition had also been imposed as a condition of the defendant's pretrial release. *See* ECF No. 58 ("Travel restricted to the Central District of California and Washington, DC for legal proceedings only."). As the defendant rightly points out, this condition was periodically modified—with the assent of the government—to allow the defendant to travel for work purposes. *See* ECF Nos. 107, 162, 284. Notably, these modifications never permitted the defendant to freely travel to Washington, D.C. *See* ECF No. 284 ("Mr. Taylor will be

1

the privilege of attending the U.S. Presidential Inauguration on January 20, 2025. The Court should refuse to let the defendant—who, after the last presidential election, conspired with others to prevent the peaceful transfer of power—to return to the scene of the crime.

A mere four years ago, the defendant, in his own words, "organize[d] a group of fighters," ECF No. 197 at ¶ 18, who were "ready and willing to fight," *id.* at ¶ 17, to come to Washington, D.C. on January 6, 2021, to stop the peaceful transfer of power after that election. He bragged to his coconspirators, who he organized in a "DC Brigade" Telegram group, that he would "be in the steps on the senate," *id.* at ¶ 12, and that he wanted to "be on the front steps and be one of the first ones to breach the doors," *id.* at ¶ 13. As the group discussed their violent plans, the defendant encouraged them to bring weapons and plate carriers. *Id.* at ¶¶ 15, 18–19, 24.

On January 6, 2021, the defendant and his coconspirators delivered on their promise. Taylor, along with others from the "DC Brigade" group he organized, stormed the Capitol. Taylor carried hatchets, stun batons, and an exposed knife on U.S. Capitol grounds. *Id.* at ¶¶ 27–31. He pushed against a police line on the Inaugural Stage, as police tried to hold back the progress of the mob; he shouted at police officers to "move back," and threatened that it was their "last chance." *Id.* at ¶ 32. The defendant was pepper sprayed by police, but retreated only briefly, before advancing again and cheering on the rioters below. *Id.* at ¶ 33. After he and other rioters successfully pushed back that police line, Taylor and Alan Hostetter held ground on the Upper

---

permitted to leave the Central District of California to travel for purpose of work to any District within the United States except the District of Columbia."). Through the pendency of this case, the defendant has been permitted to travel to Washington, D.C. only "for legal purposes or Court appearances." *Id.*

West Terrace for hours. *Id.* at ¶¶ 33–36. When police started removing rioters from the Upper West Terrace, the defendant continued to oppose them, shouting out for them to "stand down" and reiterating his threat that it was their "last chance." *Id.* at ¶ 36. After the riot, the defendant bragged in private messages, "WE STORMED THE CAPITOL!" and, when asked what comes next, he responded, "Insurrection!" *Id.* at ¶¶ 37–38. Beyond Hostetter and Taylor, other members of the "DC Brigade" Telegram group "were on Capitol grounds on January 6th," "entered the U.S. Capitol building," and "engaged in assaultive conduct on Capitol grounds on January 6th." July 11 Trial Tr. 116:1–15.[2]

The defendant's crime was of the utmost seriousness. This Court has aptly explained that, "[i]n an angry mob, there are leaders and there are followers." Notes for Sentencing, *United States v. Johnatakis*, 21-cr-91-3 (RCL), ECF No. 272. In organizing for and at the riot on January 6, 2021, Russell Taylor was a leader.[3] While Taylor has pleaded guilty, taken a cooperative posture, and been compliant with the conditions of probation to date, his request to be afforded the

---

[2] As this trial testimony reveals, the impact of the DC Brigade group at the Capitol on January 6, 2021, was significant and widespread. Taylor was charged in a conspiracy indictment in the instant case, with five other individuals, all of whom were convicted of conspiring to obstruct the certification proceeding, among other crimes. Beyond these six defendants, several other members of the DC Brigade have been convicted or are pending trial for their role in the January 6 riot. *See United States v. Benjamin Martin*, 21-cr-562 (RC); *United States v. Siaka Massaquoi*, 23-cr-421 (JMC); *United States v. Joshua Youngerman*, 23-cr-269 (TJK); *United States v. Theo Hanson*, 24-cr-57 (RCL); *United States v. Christina Kelso*, 24-cr-233 (RC); *United States v. Morton Irvine Smith*, 24-cr-442 (RCL). In several of these cases, defendants are charged with Conspiracy To Impede or Injure Officers, in violation of 18 U.S.C. § 372, based on their conspiratorial agreements with Russell Taylor. *See United States v. Joshua Youngerman*, 23-cr-269 (TJK), ECF No. 56; *United States v. Theo Hanson*, 24-cr-57 (RCL), ECF No. 34; *United States v. Christina Kelso*, 24-cr-233 (RC), ECF No. 21.

[3] For a more in-depth discussion of Taylor's conduct, the United States directs the Court to its sentencing memoranda for Alan Hostetter, ECF No. 383, and Russell Taylor, ECF No. 484.

privilege of attending the Presidential Inauguration is meritless; moreover, the request itself is outrageous in light of the nature and seriousness of the defendant's crime, which centered on the defendant's efforts to prevent the peaceful transfer of power only four years ago. The defendant has already received due consideration in exchange for his guilty plea and cooperation through the Court's imposition of a term of home confinement and probation. The Court should not lax the penalty imposed on the defendant even further by allowing him to return to the scene of his criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A) (directing the Court to consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense").

The Court should deny the defendant's motion on the grounds of the seriousness of the defendant's offense, and for lack of good cause shown. Moreover, in considering the defendant's motion, the Court should consider that, on January 20, 2025, U.S. Capitol Police officers—among the victims of the January 6, 2021 riot—will be working at the Capitol. These are officers that were victimized by Russell Taylor, his coconspirators, and the mob that day. Out of respect for their service and the ongoing effect of the January 6 riot, the Court should not bless the intrusion of a rioter once again into their place of work. At the trial of Alan Hostetter—Taylor's principal coconspirator—officers testified about Taylor's action that day, particularly his role in pushing past a police line on the Inaugural Stage. *See, e.g.*, July 10 Trial Tr. 120:4–8 ("He was taking the side of his body and using his weight to push the people in front of him further toward the police line that we had, to move us out of the way."). Another officer also testified about later interacting with Taylor on the Upper West Terrace. The officer testified that he remembered Taylor

specifically: "He had a ballistic vest on and at one point, I noticed that he had what appeared to be a dagger with brass knuckle grip in the MOLLE system on the vest." July 11 Trial Tr. 18:7–14. The officer explained he had to notice Taylor because of the knife of his plate carrier: "It's a weapon. Something that can be used against us. It stood out and that could potentially go through our vests. So I was focused on him for a good chunk of the time that he was in front of me." *Id.* 18:15–19:10. When Taylor shouted to police on the Upper West Terrace, "Choose a side!" as they tried to remove him, the officer explained he knew what that meant:

> It's either us or them. You're either going to stay with what they believe was wrong, which was why we were there to protect the Capitol, or be on their side. We didn't have an option, to him. It was you're either with us or against us. And if you're with us, that's great. If you' re against us, you're going to be fighting us.

*Id.* 19:14–20. When Taylor shouted, "This is your last chance," the officer said he knew what that meant too: "We're going to be fighting if we don't stand down." *Id.* 22:23–23:3. The same officer testified about how Taylor cheered on rioters assaulting police, noting that he made an "across-the-throat motion," and was "jumping up and down like he's getting himself amped up to be in fighting." *Id.* 30:22–31:2. The officer, who spoke at length about his specific memories of Taylor's obstructive conduct, called January 6, "one of the most chaotic, violent scenes" he had witnessed in his career. *Id.* 40:14–16. The officer explained that the impact of the riot continues: "I mean, I never got diagnosed with PTSD, but I know I have it. Just watching the videos, I'll go nights without sleep. Immediately after that, there were times where I was at events, not comfortable. I'm still not comfortable in large crowds." *Id.* 40:17–22.

The defendant's request should be denied. While the United States has not opposed previous travel requests made by the defendant, those travel requests were to facilitate the

5

defendant's continued employment, and were for travel far from the District of Columbia. The defendant's request here is wholly different: he is requesting to return to U.S. Capitol grounds for the Presidential Inauguration—for no reason other than he would like to go. He is asking for the Court to bless his desire to return to the scene of the crime, and the Court should not look past his criminal conduct the last time he was on Capitol grounds. While the defendant's cooperation and compliance with conditions of probation to date are laudable, the Court should deny the motion, in recognition of the seriousness of the defendant's crime and out of respect for the officer victims who may be working at the U.S. Capitol on January 20, 2025.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY

BY:    /s/ Anthony W. Mariano
        ANTHONY W. MARIANO, MA Bar No. 688559
        Trial Attorney, Detailee
        Capitol Siege Section
        United States Attorney's Office
        for the District of Columbia
        601 D Street N.W.
        Washington, DC 20530
        (202) 476-0319
        Anthony.Mariano2@usdoj.gov