UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RUSSELL TAYLOR,<br><br>    *Defendant*. | Case No. 1:21-cr-392-02-RCL |

## MEMORANDUM ORDER

Mr. Russell Taylor was indicted on six counts, including multiple felony charges, for his participation in the Capitol Riots of January 6, 2021. *See* Superseding Indictment, ECF No. 89. On April 19, 2023, Mr. Taylor pleaded guilty to Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k). *See* Plea Agreement 1, ECF No. 196. As part of Mr. Taylor's plea agreement, the Government agreed to dismiss all other charges against him, and Mr. Taylor agreed to assist the Government in the prosecution of his co-defendants. *Id.* at 2. As agreed, Mr. Taylor rendered substantial assistance to the prosecution, providing important information and testimony which, in part, led to the convictions of his co-defendants. *See, e.g.* Trial Transcripts, ECF Nos. 516, 322.

On May 5, 2024, in consideration of his assistance, the Court sentenced Mr. Taylor to thirty-six months' probation and no prison time. *See* Judgment, ECF No. 492. Mr. Taylor's probationary sentence was not only below the range prescribed by the Sentencing Guidelines—which recommended a prison term of approximately two years—but also considerably below the sentences his co-defendants ultimately received. *See* Judgment as to Alan Hostetter, ECF No. 384 (135 months imprisonment); Judgment as to Ronald Mele, ECF No. 474 (thirty-three months imprisonment); Judgment as to Derek Kinnison, ECF No. 472 (thirty-three months imprisonment);

1

Judgment as to Felipe Antonio Martinez, ECF No. 470 (twenty-one months imprisonment); Judgment as to Erik Scott Warner, ECF No. 468 (twenty-seven months imprisonment).

As a condition of Mr. Taylor's probationary sentence, he is required to secure permission from a probation officer or the Court before leaving the Central District of California, where he resides. *See* Judgment at 3. The Probation Office considers this to be a "standard condition[] of supervision" commonly applied in probationary sentences. *Id.* Pursuant to this condition, Mr. Taylor has asked for the Court's permission to travel to Washington, D.C. from January 16, 2025 to January 21, 2025 so that he may attend the upcoming Presidential Inauguration ceremony with his wife and children. *See* Mot. to Travel, ECF No. 520. Affixed to the Motion is an invitation from former Utah Congressman Chris Stewart, attesting to Mr. Taylor's integrity, faith, and good values. *See* Mot. to Travel Ex. 1, ECF No. 520-1. The Government has filed an opposition to Mr. Taylor's Motion, *see* Opp'n, ECF No. 521, and Mr. Taylor's time to file a reply has now run. The Motion is therefore now ripe for this Court's review, and for the reasons contained herein, it is hereby **DENIED**.

As a preliminary matter, the Government's opposition brief states that Mr. Taylor's Motion to Travel is "in effect a motion to modify the conditions of the defendant's probation." *Id.* at 1. This is not true. Mr. Taylor's conditions of probation permit him to travel outside of the Central District of California *if* he first garners the appropriate permission. In his Motion, Mr. Taylor is seeking such permission. He is, therefore, not requesting a modification of his release terms, but rather is acting consistently with the conditions of his probation, as he has evidently done since he was sentenced.

Nevertheless, the decision to grant or withhold permission to travel is within the Court's discretion, and this Court finds that the particular nature and severity of Mr. Taylor's conduct at

the Capitol Riots counsel against giving him the permission to travel that he now seeks. Contemporaneously with his plea agreement, Mr. Taylor signed a Statement of Offense, in which he affirmatively admitted to certain conduct before and during the events of January 6, 2021. *See* Statement of Offense, ECF No. 197. Specifically, Mr. Taylor affirmed that he traveled to the District of Columbia with the "intent . . . to intimidate Congress . . . in order to . . . influence members of Congress to reject the certification of the 2020 electoral college vote . . . ." *Id.* ¶ 10. More than a week before the event, Mr. Taylor expressed his desire to "be on the front steps and be one of the first ones to breach the doors" of the Capitol. *Id.* ¶ 13. He gave a backpack full of weapons, including "a knife, a stun baton, two hatchets, and carbon fiber knuckle gloves," to his co-defendant Alan Hostetter to transport to D.C., believing that he could not bring them himself by plane, and actively encouraged others to bring weapons and armor to the Capitol as well. *Id.* ¶¶ 14–15, 18, 24. Mr. Taylor brought a knife and plate carrier vest to the Capitol and carried a backpack containing a hatchet and stun baton. *Id.* ¶ 29. During the Riots, Mr. Taylor pushed past police barricades, encouraged fellow rioters to push against a police line where officers were being visibly assaulted, joined the push himself, and repeatedly threatened the police protecting the Upper West Terrace that it was their "[l]ast chance" to "stand down" and abandon their position. *Id.* ¶¶ 32, 36. In messages that he sent later that evening, Mr. Taylor openly acknowledged that he possessed weapons throughout the day's events, and when asked what would happen next, he replied "[i]nsurrection!" *Id.* at 38.

      This summary paints the picture of Mr. Taylor's unusually grave conduct. While he did not personally assault law enforcement officers, he did threaten them and encourage other rioters who were actively assaulting them. He also contributed meaningfully to the sheer danger of the day's events by arriving armed and armored, encouraging others to do the same, and even

3

providing weapons to Mr. Hostetter. And although Mr. Taylor's rhetoric on the day of the Capitol Riots is interspersed with pro-America motifs and allusions, his unlawful conduct and his later espousal of "insurrection" belie any patriotic motives he may have professed that day.

As detailed above, Mr. Taylor commendably took responsibility for his actions and furnished extensive assistance to the Government. For this, he earned a probationary sentence—which, as also discussed above, is drastically more lenient than the sentences each of his co-defendants received—and the right to ask this Court for permission to travel. But Mr. Taylor's cooperation and good conduct while on probation do not diminish the seriousness of his acts on January 6, 2021, to which he has voluntary admitted, nor do they entitle him to the permission he now seeks. To attend the Presidential Inauguration, which celebrates and honors the peaceful transfer of power, is an immense privilege. It would not be appropriate for the Court to grant permission to attend such a hallowed event to someone who carried weapons and threatened police officers in an attempt to thwart the last Inauguration, and who openly glorified "[i]nsurrection" against the United States.

In arriving at this decision, the Court duly considered former Congressman Stewart's letter endorsing Mr. Taylor's character. The Court takes no position today on Mr. Taylor's good attributes to which the letter gestures, namely his "integrity," "faith," family values, and service to the less fortunate. Such personal attributes may inform the Court's decision at sentencing, but to reiterate, Mr. Taylor *already* received an unusually lenient sentence relative to the acts he committed. In addition to his cooperation and acceptance of responsibility, that sentence took into account many of the attributes mentioned in the letter: Mr. Taylor's otherwise law-abiding life, steady employment, lack of drug use, family support, and community involvement, among other factors. However, Mr. Taylor's good traits and adherence to his terms of probation are of only

marginal importance to the Motion at hand. Mr. Taylor's Motion presents only the narrow question of whether a person who conspired and acted to thwart the peaceful transfer of power four years ago with incitement, threats, and weapons should now be granted special permission to attend the celebration of the peaceful transfer of power. The answer to that question is "no," whether or not he is, generally speaking, a good person.[1]

Therefore, upon consideration of the defendant's Motion to Travel, the response thereto, and the entire record herein, it is hereby **ORDERED** that the Motion is **DENIED**.

Date: January 3, 2025

Royce C. Lamberth
United States District Judge

---

[1] The Court is aware that at least one other Capitol Riots defendant has been granted permission to travel to attend the Inauguration ceremony. *See* Minute Order, *United States v. Peterson*, 24-cr-376-TSC (D.D.C. Dec. 19, 2024). However, the Statement of Offense in that case reflects conduct that is substantially less severe than what Mr. Taylor, by his own admission, did on January 6, 2021. *See generally* Statement of Offense, *United States v. Peterson*, 24-cr-376-TSC (D.D.C. Nov. 1, 2024), ECF No. 19 (describing the defendant, apparently unarmed, entering the Capitol building, without direct or confrontational engagement with law enforcement, and leaving eight minutes later when Capitol Police officers instructed him and others to disperse).